## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LILLIE MAE MOORE,**

     **Plaintiff,**

v.                            **Case No. 8:23-cv-206-AAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner,**
**Social Security Administration,**

     **Defendant.**

_____/

## ORDER

Plaintiff Lillie Mae Moore requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the hearing before the Administrative Law Judge (ALJ), the administrative record, and the parties' briefs, the Commissioner's decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY

Ms. Moore applied for DIB and SSI on June 10, 2020, alleging a disability onset date of May 4, 2019. (Tr. 343–52, 353–57). Disability examiners denied Ms. Moore's application initially and on reconsideration. (Tr. 114–25, 126–37,

138-65). Following a hearing, the ALJ issued a decision unfavorable to Ms. Moore on January 27, 2022. (Tr. 28–42). The Appeals Council denied Ms. Moore's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1–4). Ms. Moore now requests judicial review of the Commissioner's decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Ms. Moore was fifty-four years old on her alleged disability onset date and the date she applied for social security benefits. (Tr. 74, 343, 353, 392). Ms. Moore completed the eleventh grade and has past work experience as a housekeeper. (Tr. 57, 58–59, 74, 425, 447).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.972.

basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ determined Ms. Moore had not engaged in substantial gainful activity since May 4, 2019, her alleged disability onset date. (Tr. 30). The ALJ found Ms. Moore has these severe impairments: obesity, right rotator cuff derangement, bilateral knee degenerative disease, asthma, left wrist fracture, and neurocognitive disorder. (Tr. 31). However, the ALJ concluded Ms. Moore's impairments or combination of impairments fail to meet or medically equal the

---

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

severity of an impairment in the Listings. (*Id.*).

The ALJ found Ms. Moore had an RFC to perform light work[4] with these limitations:

> occasionally reaching overhead with the right upper extremity; frequent reaching in all other directions with the right upper extremity; frequent handling with the left upper extremity, which is dominant extremity; occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, frequent stopping, occasional kneeling, crouching, and crawling; no exposure to unprotected heights or moving mechanical parts; occasional concentrated exposure to dust, odors, fumes, and pulmonary irritants; simple, routine and repetitive tasks that are not performed at a production-rate pace, such as that found in assembly-line work; and limited to occasional changes in a predictable work setting.

(Tr. 35–36).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Moore could perform her past relevant work as a housekeeper. (Tr. 41). As a result, the ALJ found Ms. Moore was not disabled from May 4, 2019, through the date of the decision. (Tr. 42).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(6), 416.967(6).

## III.  ANALYSIS

### A.  Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see*

5

*also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.    Issues on Appeal

Ms. Moore raises two issues on appeal: (1) whether substantial evidence supports the ALJ's evaluation of the medical opinions of Susan Johnson, M.D. and Craig Barron, PsyD. (Doc. 19, pp. 3–20); and (2) whether substantial evidence supports the ALJ's RFC determination when she found Ms. Moore's limitations based on her left wrist fracture without support of any medical opinion evidence (*Id*. at pp. 20–24).

### 1. Whether the ALJ properly evaluated the medical evidence.

Ms. Moore argues the ALJ failed to properly consider the medical opinions of Dr. Johnson and Dr. Barron. (Doc. 19, pp. 3–20). In response, the Commissioner contends the ALJ properly considered the medical opinion evidence in reaching his RFC assessment. (Doc. 20, pp. 6–15).

Under the revised regulations, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The new

regulatory scheme "forbids administrative law judges from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s),'" *Harner v. Social Security Admin.*, Comm'r, 38 F.4th 892, 898 (11th Cir. 2022), and an ALJ does not have to "explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022). The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(c)(5). The ALJ must articulate how the supportability and consistency factors were considered for a medical source's opinions or prior administrative medical findings, but an ALJ need not articulate how the remaining factors were considered unless there are equally persuasive medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

On October 5, 2020, Dr. Johnson evaluated Ms. Moore. (Tr. 503–06). Dr. Johnson assessed bilateral knee pain. (Tr. 504). Dr. Johnson opined that Ms. Moore would have difficulty with stairs and should avoid heavy lifting. (*Id.*). Ms. Moore could stand/walk six hours, but she should be allowed to sit every one to two hours. (*Id.*). Finally, Dr. Johnson opined that Ms. Moore could occasionally reach overhead. (*Id.*).

The ALJ found Dr. Johnson's opinion "generally persuasive" as the limitations she assessed are "generally consistent with the record, including her own mostly intact examination findings, claimant's self-reported symptoms, and the lack of treatment for her knee and shoulder impairment during the relevant time period." (Tr. 41). The ALJ found additional limitations related to Ms. Moore's left which fracture, which occurred after Dr. Johnson's evaluation. (*Id*.). However, the ALJ found that:

> As for the need to change positions, a change every two hours is consistent with normal breaks throughout the workday and would not require a specific limitation. The undersigned finds that a need to change position every hour is not consistent with the record, including the minimal examination findings as well as the claimant's complete lack of treatment for her knee impairment during the relevant time period.

(*Id*.).

Ms. Moore claims that the ALJ failed sufficiently articulate the supportability factor and explain her reasoning and build a "logical bridge" from the evidence to the conclusion that Dr. Johnson's opinion was not supported and was inconsistent with the minimal examination finding and Ms. Moore's lack of treatment for her knee impairment during the relevant time period. (Doc. 19, pp. 6–14). Ms. Moore further claims that the ALJ impermissibly "picked and chose" through the consultative examination. (*Id.,* p. 11).

8

Ms. Moore's logical bridge argument fails. In essence, she argues that the ALJ's evaluation of the persuasiveness of Dr. Johnson's opinion was conclusory and without explanation. However, a "logical bridge" simply means that "an ALJ must articulate at some minimum level, her analysis of the evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Ultimately, this requirement does not alter the substantial evidence standard. *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). The ALJ has satisfied the substantial evidence standard here.

The ALJ's decision, read as a whole, supports the ALJ's finding that Dr. Johnson's opinion was generally persuasive except for the need to change positions every hour. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses" multiple times throughout decision); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that the ALJ's decision contained a sufficient explanation for the step three finding because the ALJ is not required to "use particular language or adhere to a particular format").

While the ALJ did not use the word "supportability," elsewhere in the decision, the ALJ noted that, upon examination by Dr. Johnson, Ms. Moore had a normal range of motion in the lumbar spine and knees bilaterally, intact

strength and sensation, a negative straight leg test and a normal Romberg. (Tr. 37, 504).  Ms. Moore was able to walk on heels and toes and had a normal gait and station. (Tr. 37–38, 503). Contrary to Ms. Moore's argument, the ALJ acknowledged the Ms. Moore had decreased reflexes (although Dr. Johnson did not indicate which reflexes), crepitus, and complained of pain in the knees with palpitation. (Tr. 37, 504).

The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021). As the ALJ assessed Dr. Johnson's medical findings, the articulation requirement has been met.

The ALJ addressed consistency too, concluding that Dr. Johnson's opinion that Ms. Moore would need to change positions every hour was contradicted by Dr. Johnson's minimal findings upon examination and Ms. Moore's lack of treatment during the relevant time period. (Tr. 41).

While Ms. Moore points to her subjective complaints of pain and other symptoms as support for Dr. Johnson's opinion (Doc. 20, pp. 11–12), the ALJ considered Ms. Moore's statements and found that they were not consistent with the overall record, including her minimal treatment, the minimal examination findings, and Ms. Moore's activities of daily living. (Tr. 36–37).

Ms. Moore does not dispute that finding.

Ms. Moore points to other evidence she claims supports Dr. Johnson's opinion that Ms. Moore needs to change positions every hour. (Doc.  19, p. 12 (citing Tr. 457–59)). Ms. Moore essentially requests that the court reweigh the medical evidence in her favor, something it cannot do. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). The ALJ's conclusion that Dr. Johnson's medical opinion was generally persuasive except for the need to change positions every hour is supported by substantial evidence.

Dr. Barron conducted a psychological evaluation of Ms. Moore on May 12, 2021. (Tr. 610–15). WAIS-IV testing indicated a full-scale I.Q. in the borderline range. (Tr. 611). Overall, testing showed low average intellectual abilities except for a mild disability range verbal comprehension score. (*Id.*). WMS-IV testing showed global impairment in both verbal and nonverbal memory. (*Id.*). Dr. Barron opined that Ms. Moore's test scores suggested neurocognitive disorder secondary to a traumatic brain injury and a cerebral vascular accident. (*Id.*). Dr. Barron opined that Ms. Moore was not capable of communicating, comprehending, and retaining simple directions at an unskilled competitive employment. (Tr. 615). Dr. Barron further opined that Ms. Moore was not capable of withstanding work-related stresses, attending work regularly, rapidly performing routine repetitive activities on a sustained

11

basis, meeting production requirements, and relating to others at an unskilled, competitive employment level. Dr. Barron also found that Ms. Moore was not capable of managing financial benefits independently in a responsible manner. (*Id.*).

The ALJ evaluated Dr. Barron's opinion and found it not persuasive. (Tr. 41). The ALJ shared how she evaluated supportability and consistency:

> This opinion is not consistent with the record as a whole, including the claimant's good activities of daily living, including her ability to work a competitive part-time job during the relevant time period and ability to assist her mother. It is also inconsistent with the doctor's own examination findings, which aside from low scores in verbal comprehension and memory were fairly normal. This includes her low average scores in processing speed, perceptual reasoning, and working memory indices of the WAIS-IV and her intact mental status examination.

(*Id.*).

Similar to her arguments relating to Dr. Johnson's opinion, Ms. Moore contends that the ALJ failed to properly explain how she considered the supportability factor. (Doc. 20, pp. 15–18). She claims that the ALJ failed to explain her reasoning and build a "logical bridge" from the evidence to the conclusion that Dr. Barron's opinion was not supported and was inconsistent with Ms. Moore's daily activities, ability to work a part-time job, and assist her mother. (*Id.* at 15–19). She also claims that the ALJ impermissibly "picked and chose" through the consultative examination. (*Id.* at 16). In essence, she argues

12

that the ALJ's evaluation of the persuasiveness of Dr. Barron's opinion was conclusory and without explanation.

Ms. Moore's logical bridge argument again fails. A logical bridge, as discussed above, does not alter the substantial evidence standard, which is met here. The regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions. *See Rice*, 384 F.3d at 370 n.5. Substantial evidence supports the ALJ's finding that Dr. Barron's opinion was not persuasive.

Although the ALJ only briefly addressed supportability when discussing the reasons she found Dr. Barron's opinion unpersuasive (Tr. 41), elsewhere in the decision the ALJ discussed Dr. Barron's psychological evaluation of Ms. Moore at length. (Tr. 33, 39). Contrary to Ms. Moore's claim, the ALJ acknowledged Ms. Moore's test results including a Full-Scale I.Q. ("FSIQ") on the Weschler Adult Intelligence Scale-IV ("WAIS-IV") in the borderline range, a comprehension score in the mildly disabled range, a Weschler Memory Scale-IV ("WSM-IV") score showing impaired memory and that she did poorly on the math section of WAIS-IV. (Tr. 33, 39, 610-11). The ALJ also noted that Ms. Moore's perceptual reasoning, working memory, and processing scores where in the low average range. (Tr. 33, 611).

The ALJ, however, noted that the mental status examination showed

well-articulated speech without paraphrasic error, appropriate affective reactions, congruent mood, and logical and goal-directed thoughts with no evidence of blocking or flightive ideas. (Tr. 39, 612). Ms. Moore was oriented, made good eye contact, and demonstrated good task orientation, cooperation, motivation, and effort. (Tr. 39, 612–13). Ms. Moore was able to recall the name of the current and previous president, interpret proverbs abstractly, and could perform serial 7's. (Tr. 33, 39, 613). She was able to recall seven digits forward and four backwards. (*Id.*).

Likewise, the decision, read as a whole, support's the ALJ's rejection of Dr. Barron's opinion as inconsistent with Ms. Moore's activities of daily living, her abilities to work a part-time job and care for her mother. The ALJ noted that Ms. Moore was able to perform regular cleaning tasks, cook, shop, go out alone, drive a car, do laundry, manage her finances, play cards, and games, read and watch television. (Tr. 32–33, 397–99, 417–19). She also could engage in social activities and hobbies. (Tr. 34, 399, 419). The ALJ also noted that Ms. Moore worked an unskilled part-time job until COVID-19 restrictions caused her to cease working. (Tr. 33–34, 57–58, 60). She was also able to assist her ailing mother. (Tr. 33–34, 56, 439). Ms. Moore reported that she got along with others, including authority figures, and could follow written and spoken instructions well. (Tr. 33, 420–21).

Ms. Moore again points to other evidence to support Dr. Barron's opinion, including her reports of subjective symptoms and related complaints. (Doc. 19 at 16). But again, Ms. Moore does not dispute the ALJ's finding that Ms. Moore's subjective complaints were not consistent with the overall record, including her minimal treatment, the minimal examination findings, and Ms. Moore's activities of daily living. (Tr. 36–37). While Ms. Moore argues that Dr. Johnson's opinion was consistent with the opinion of a state agency consultant, Doc. 19, p. 19), the ALJ found that opinion only partially persuasive and rejected the finding of moderate limitations in interacting with others and adapting or managing oneself and corresponding social limitations. (Tr. 40). Ms. Moore did not dispute that finding.

While a different factfinder may have credited Dr. Barron's opinion, that is not the test. The dispositive question here is whether there is "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154. "The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020).

Here, substantial evidence supports the ALJ's consideration of the medical opinions of Dr. Johnson and Dr. Barron in reaching her RFC

assessment.

## 2. Whether the ALJ properly evaluated Ms. Moore's RFC.

Ms. Moore argues the ALJ's RFC assessment fails to account for Ms. Moore's left wrist limitations. (Doc. 19, pp. 20–25). Ms. Moore claims that the ALJ failed to develop the record by not ordering a consultative examination on Ms. Moore's left wrist or recontacting her physician. (*Id.*, p. 22 ). She argues that, had the ALJ further developed the record, additional limitations might have been posed by the ALJ to the VE which could have changed the VE's responses to hypothetical questions, and, in turn, could have resulted in a lesser RFC and a finding of disabled. (*Id.*, p. 24). In response, the Commissioner argues that the ALJ sufficiently developed the record and did not require a physician's opinion to assess Ms. Moore's RFC. (Doc. 15, pp. 15–20).

A claimant's RFC is the most she can still do despite her limitations and is based on all the relevant evidence in the case record, including medical history, medical reports, medical source statements, and descriptions of limitations from the claimant and others. 20 C.F.R. §§ 404.1545(a), (a)(3), 416.945(a), (a)(3). An ALJ does not "play doctor" merely by determining a claimant's RFC based on her review of the record as a whole. *Castle v. Colvin*, 557 F. App'x 849, 853 (11th 2014). Indeed, the pertinent regulations obligate

an ALJ to render such an assessment. *Id.* at 853–54 (citation omitted); *see also Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam).

Here, the ALJ found Ms. Moore had exertional limitations and mental limitations. (Tr. 35-36). Regarding Ms. Moore's left wrist impairment, the ALJ found a frequent handling limitation was appropriate. (Tr. 38). But given Ms. Moore's lack of pain based on the fracture, lack of treatment, and Ms. Moore's activities of daily living, the ALJ did not find additional limitations. (*Id.*).

Contrary to Ms. Moore's argument, the ALJ was not required to base the RFC finding on a medical opinion. *See Castle*, 557 F. App'x at 854 (ruling the district court erred in requiring that the ALJ's finding to be "underpinned by a medical source opinion"); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923–24 (11th Cir. 2007) (per curiam) (concluding that the ALJ did not err in predicating the claimant's RFC on the medical evidence before him although this finding conflicted with the only medical opinion of record, which the ALJ discredited); *Jackson v. Colvin*, Case No. 8:14-cv-1159-T-TGW, 2015 WL 12844406, at *4 (M.D. Fla. July 16, 2015) (stating that an ALJ's RFC finding "need not be based on a physician's opinion of the plaintiff's functioning"); *Gregory v. Astrue*, Case No. 5:07-cv-19-Oc-GRJ, 2008 WL 4372840, at *8 (M.D. Fla. Sept. 24, 2008) ("A medical opinion is...not required to validate a RFC

finding by the ALJ.").

Ms. Moore is correct that an ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).[5] Nevertheless, "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for proving evidence in support of his claim." *Id.* Further, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In evaluating the necessity for a remand, the court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted). Unless the record contains insufficient evidence to make an informed decision, the ALJ is not required to contact a treating physician or order a consultative exam. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

Here the ALJ fully developed the record, and there was sufficient evidence in the record to support the ALJ's RFC determination related to Ms.

---

[5] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995). Ms. Moore was represented during the administrative proceedings. (See Tr. 48–78). Therefore, the ALJ, in this case, only had a basic duty to develop the record.

Moore's left wrist impairment. Ms. Moore's initial application for disability was concerned with impairments of the knee, shoulder, and back along with her history of stroke, tendonitis, high blood pressure and swelling. (Tr. 386). In November 2020, Ms. Moore fell and suffered a left distal radius/wrist fracture. (Tr. 415, 560, 565, 569). Ms. Moore underwent an open reduction internal fixation surgery in December 2020. (Tr. 556–58). On March 10, 2021, she could make a near full fist with fingers three through five but had difficulty in flexion with her second finger. (Tr. 635). Ms. Moore had intact grip strength, sensation, and motor strength at the extensor pollici longus and flexor pollcis longus. (Tr. 635-36). Upon follow-up in June 2021, Ms. Moore could not make a full grip, but had intact sensation and grip strength and motor strength. (Tr. 617). An x-ray showed that Ms. Moore's left distal radius fractured had healed completely but there was nonunion of the ulnar styloid. (*Id.*). Ms. Moore did not have pain in that location, however. (*Id.*). She was encouraged to do exercises to increase her range of motion but was released to resume all activities as tolerated. (Tr. 618). Ms. Moore testified that she had no sought follow up care since June 2021. (Tr. 62).

Because the medical records contained enough information for the ALJ to make an RFC determination, there was no requirement to order a

consultative exam.[6] *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006) (finding that the ALJ did not err in refusing to order a consultative exam because the record contained extensive medical records about the claimant's physical complaints). Additionally, as Ms. Moore had not sought treatment since June 2021 and the ALJ had the records from her last evaluation, she has not shown prejudice as a result of the ALJ's failure to contact her treating physician.

In short, Ms. Moore only provides speculative evidence that contacting her treating physician or ordering a consultative exam would provide evidence supporting her claim. Speculative evidence is not a basis for remanding the case. *Cf. Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (There is no prejudice when the assertion that the plaintiff would have benefitted from a more extensive hearing was speculative.).

## IV.   CONCLUSION

Accordingly, the Commissioner's decision is **AFFIRMED.** The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the

---

[6] Neither Ms. Moore nor her attorney requested the ALJ order a consultative examination. *See Osborn v. Barnhart*, 194 F. App'x 654, 668–69 (11th Cir. 2006) (finding the argument that more medical evidence was necessary was unpersuasive because, among other reasons, counsel did not allege that the medical records were inadequate). Rather, Ms. Moore's attorney advised the ALJ that "[t]he record is complete." (Tr. 53)

case.

      **ORDERED** in Tampa, Florida on November 27, 2023.

AMANDA ARNOLD SANSONE
United States Magistrate Judge